AO 106 (Rev. 04/10) Application for a Search Warrant

___ FILED ___ ENTERED
___ LODGED ___ RECEIVED

NOV 28 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>a LG brand cell phone associated<br>with telephone number 206-822-5522 | )<br>)<br>) Case No.  MJ18-545<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached and incorporated herein.

located in the   Western   District of   Washington  , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Felon in Possession of a Firearm |
| 21 U.S.C. 841(a)(1) | Distribution/Possession w/Intent to Distribute Controlled Substances |

The application is based on these facts:
Please see Affidavit of Special Agent Gregory Heller (ATF)

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Special Agent Gregory Heller (ATF)
Printed name and title

Sworn to before me and signed in my presence.

Date:   11/28/2018

_____
Judge's signature

City and state:  Seattle, Washington                Hon. James P. Donohue, United States Magistrate Judge
Printed name and title

USAO No. 2018R01267

# AFFIDAVIT

STATE OF WASHINGTON  )
                     )  ss
COUNTY OF KING       )

I, Gregory Heller, a Special Agent/Task Force Officer with the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), in Seattle, Washington, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a special agent (SA) duly sworn and employed by the U.S. Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I am currently assigned to the Seattle V ATF Field Office, located within the Seattle, Washington, Field Division. I have been employed as a special agent since September 2014. Prior to this employment, I was employed as a police officer and detective for Gwinnett County, Georgia, from 2007 to 2014. In total, I have approximately eleven years of state and federal law enforcement experience.

2. I am a graduate of Duke University in Durham, North Carolina, where I received a Bachelor of Science in Engineering (B.S.E.) in Civil Engineering. I completed a twelve-week Criminal Investigator Training Program (CITP) and a fourteen-week Special Agent Basic Training (SABT) at the ATF National Academy/Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I also completed a 23-week Gwinnett County Police Training Academy and was a Peace Officer Standards and Training (P.O.S.T.) certified peace officer in the State of Georgia.

3. I am responsible for investigations involving specified unlawful activities, to include violent crimes involving firearms that occur in the Western District of Washington. I am also responsible for enforcing federal firearms and explosives laws and related statutes in the Western District of Washington. I received training on the proper investigative techniques for these violations, including the identification of firearms and location of the firearms' manufacture. I have actively participated in investigations of

AFFIDAVIT OF SPECIAL AGENT HELLER - 1
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

criminal activity, including but not limited to: crimes against persons, crimes against property, narcotics-related crimes, and crimes involving the possession, use, theft, or transfer of firearms. During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the commission of criminal violations. As a law enforcement officer, I have testified under oath, affirmed to applications of search and arrest warrants, and obtained electronic monitoring orders.

## PURPOSE OF AFFIDAVIT

4. This Affidavit is submitted in support of an application to search a cellular phone (hereinafter **"SUBJECT DEVICE"**), described in Attachment A, attached hereto and incorporated by this reference as if set forth fully herein. As further explained below, The **SUBJECT DEVICE** was recovered from subject LORENZO BELL's bedroom during execution of a search warrant. Furthermore, Seattle Police Detective William Miller confirmed that the phone number associated with the SUBJECT DEVICE is 206-822-5522, which is the same number that BELL provided to a confidential informant (CI) after a controlled purchase of narcotics.

5. The **SUBJECT DEVICE** is a black and blue LG brand Model LM-X212TA cellular phone with serial number 804CYYQ025962 and IMEI number 356351-09-025962-0 that was associated with phone number 206-822-5522. The **SUBJECT DEVICE** was entered into Seattle Police Department evidence as tag number 830840-3 and later transferred to ATF Evidence under case 787095-19-0010 as Item #0004.

6. The **SUBJECT DEVICE** is currently in the custody of ATF and is secured in the ATF Seattle V Field Office evidence vault in Seattle, Washington.

7. As set forth below, there is probable cause to believe that the **SUBJECT DEVICE** contains evidence, fruits and instrumentalities of the following crimes: felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), and distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1), as further described in Attachment B, attached hereto and incorporated by this reference as if set forth fully herein.

AFFIDAVIT OF SPECIAL AGENT HELLER - 2
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      The information set forth in this Affidavit consists of information I have gathered and observed firsthand through the course of this investigation to date, as well as information relayed to me by other law enforcement officers, my review of law enforcement reports, and interviews of witnesses. Since this Affidavit is being submitted for the limited purpose of obtaining a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the issuance of such warrant.

## SUMMARY OF INVESTIGATION

### A. Background.

9.      Seattle Police Detective William Miller has advised me of the following. In June 2018, personnel assigned to SPD's West Precinct noticed an uptick in narcotics related activity in the vicinity of the King County Courthouse. These personnel created a plan to target this activity and reached out to SPD's Narcotics unit for assistance. Detective Miller was assigned this project and began to do background research on a provided list of known narcotic traffickers in the area.

10.     Detective Miller conducted his own surveillance of the area around the King County Courthouse (516 3rd Avenue South) and observed the immense amount of narcotics activity. Detective Miller observed numerous known drug traffickers standing and parking vehicles near the courthouse to sell narcotics. He observed dealers arrive at varying hours of the day and remain there whilst foot and vehicular traffic arrive to purchase narcotics.

11.     During this surveillance, Detective Miller observed a consistent dealer arrive and park at the intersection of 3rd Avenue and Yesler Street in downtown Seattle. This dealer is LORENZO H. BELL (DOB XX-XX-1945). Detective Miller was able to identify BELL by sight after researching known narcotics traffickers in the downtown core. According to Detective Miller, BELL typically arrived to the Third and Yesler area around 9:00 a.m.. This time coincided with the nearby Lazarus center breakfast service, which provides meals to homeless individuals.

AFFIDAVIT OF SPECIAL AGENT HELLER - 3
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12. On June 27, 2018, around 9:30 a.m., Detective Miller observed BELL parked at Third and Yesler. Throughout the surveillance, BELL was observed making transactions in his vehicle, bearing Washington license plate AWE4811. Numerous individuals would sit in BELL's vehicle for a short time and exchange items. This is indicative of narcotics trafficking.

13. On June 29, 2018, at 8:42 a.m., Undercover SPD Detective Chin (hereinafter referred to as a "UC") contacted BELL while BELL was parked at Third and Yesler. BELL directed the UC to another dealer for the purchase of crack cocaine. BELL did not want to sell to the UC because of the small amount of crack cocaine the UC asked to purchase. After BELL facilitated this sale, he was observed by detectives making several contacts with individuals inside his tan Mercedes Benz 420 bearing Washington license plate AWE4811.

14. On July 5, 2018, BELL was observed parked near Third and Yesler in the morning. BELL was observed making contacts with customers in his vehicle. Undercover Detective Chin was sent to purchase narcotics from BELL. The UC spoke with BELL through the passenger window, which was rolled down. BELL instructed the UC to get inside the vehicle. The UC then sat in the car with the door open, to which BELL said "I don't do business this way, close the door." The UC attempted again to purchase crack cocaine from BELL, but BELL would not sell crack while the door to the Mercedes Benz was open.

15. On July 13, 2018, detectives observed BELL leave his apartment complex (The Madison Apartments) at approximately 9:30 a.m. and drive his Mercedes Benz to the 400 Block of Second Avenue Extension South in Seattle. Upon arriving in this area, BELL exited the vehicle and went to the trunk where he removed a small backpack or satchel. BELL remained in this block for an extended period of time before detectives left for another operation.

16. SPD used a confidential informant (CI) during this investigation. The CI has worked with law enforcement in other investigations, which led to arrests and

AFFIDAVIT OF SPECIAL AGENT HELLER - 4
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prosecutions for drug-related crimes. The CI was paid for his/her work with on this investigation, including the controlled purchase of cocaine from BELL described in greater detail below.[1]

17. On July 28, 2018, the CI called and stated BELL was observed driving a newer 7-series BMW around Pioneer Square. The CI stated he/she observed BELL dealing from this vehicle.

18. BELL was observed parked in the 200 block of Yesler Street sitting in a silver BMW 745 bearing Washington license plate BJL2129. The bill of sale on this car read as follows:

NOTIFICATIONS
THIS VEHICLE HAS BEEN SOLD.
SLD/07-13-2018.
NAM/BELL, LORENZO.
STR/823 MADISON ST
APT 301.
CIT/SEATTLE.STA/WA.ZIP/98104

19. In the week before July 31, 2018, on a date and time known to Detective Miller and not further detailed to avoid revealing the CI's identity, detectives met the above-listed CI at a pre-determined meeting location in Seattle. The CI was searched for narcotics, paraphernalia, currency and weapons. The CI was free from the listed items. The CI was given pre-recorded buy money and instructed to purchase narcotics from BELL.

20. Detectives monitored the apartment complex at 823 Madison Street in Seattle (The Madison Apartments). Through a conversation with BELL's apartment manager, detectives confirmed that BELL lived in unit 301. Detectives observed BELL's Mercedes Benz, bearing Washington license plate AWE4811, parked on Ninth Avenue just south of Madison Street. This is the east side of the apartment complex. Detectives

---

[1] For purposes of this affidavit, the Court can assume that the CI has one criminal conviction within the past ten years, for a drug offense, as well as older convictions for Assault 4 - DV (2001), DWI (1999), Reckless Driving (1990), Damage Property (1990), Dangerous Drugs (1989), and Larceny (1989).

AFFIDAVIT OF SPECIAL AGENT HELLER - 5
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

observed BELL leave the front door of the apartment complex carrying a small backpack or satchel. This backpack was placed in the trunk of the vehicle before BELL left the parking space. BELL walked to the Mercedes Benz and drove to Pioneer Square. BELL remained in the driver seat of the parked vehicle.

21.   Once BELL parked, the CI traveled to BELL. The CI did not contact anyone and was under constant observation by detectives. The CI entered the passenger seat of the car and purchased crack cocaine from BELL. The CI then left BELL and went to a pre-determined meet location where he/she met with detectives. While the CI traveled to this location he/she did not stop or contact anyone.

22.   Once at the meet location, the CI handed over a quantity of narcotics which contained suspected crack cocaine. The CI and their property were again searched for narcotics, paraphernalia, currency and weapons. Again, the CI was free of the listed items. The quantities of narcotics and price for them are known to Detective Miller and not further detailed to avoid revealing the CI's identity.

23.   The CI stated he/she briefly spoke with BELL, whom he/she knows by the street name of "Mustafa." BELL gave his phone number to the CI for future transactions. The CI provided "Mustafa's" phone number as 206-822-5522.

24.   Detective Miller showed the CI a picture of BELL, and the CI confirmed the photograph as the person he/she knows as "Mustafa." There were no identifying marks on the photograph presented to the CI. The CI was released and the listed crack cocaine was transported to the Seattle Police Department for further processing.

25.   Detective Miller conducted a field test on the suspected narcotics in accordance with the protocols established by the Washington State Patrol Crime Laboratory (WSPCL). He used the appropriate NIK field tester "G" to conduct the test and received positive results for the presence of crack cocaine. The crack cocaine was placed into evidence.

**B.   BELL's Arrest on August 3, 2018.**

AFFIDAVIT OF SPECIAL AGENT HELLER - 6
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

26. On July 31, 2018, Detective Miller applied for a search warrant for BELL's apartment unit, one of BELL's vehicles (the Mercedes Benz), and BELL's person. King County Superior Court Judge Kristin Richardson issued the warrant.

27. On August 3, 2018, at about 6:45 a.m., BELL was arrested at First and Cherry in downtown Seattle, after leaving his apartment in his BMW. Arresting officers searched BELL and located a sandwich bag of crack cocaine, an Altoids tin with several rocks of crack cocaine packaged for resale, and $190 in cash. BELL was transported to the West Precinct.

28. Investigators weighed the suspected crack cocaine recovered from BELL's person, which weighed 27.5 grams and 1.5 grams respectively. The substances field-tested positive for cocaine.

C.   **Search of BELL's Apartment on August 3, 2018.**

29. At about 8:00 a.m., SPD's South Precinct Anti-Crime Team (ACT) served the search warrant at 823 Madison ST, unit 301, and the Mercedes Benz bearing Washington license plate AWE4811. The officers found a female, E.B., inside the apartment. Officers searched the apartment and located an Interarms Star 9mm semiautomatic pistol bearing serial number 1603272 on BELL's bed. The pistol had a loaded magazine inserted, with an empty chamber. A second loaded 9mm magazine for the pistol was located in a bag in the bedroom.

30. A small amount of crack cocaine and $36 cash were also recovered from the apartment, along with paperwork in BELL's name. The **SUBJECT DEVICE** was also located in BELL's bedroom, next to BELL's bed. Detective Miller called 206-822-5522, the phone number provided by the CI, and the **SUBJECT DEVICE** rang.

D.   **BELL's Criminal History.**

31. I have reviewed BELL's National Crime Information Center (NCIC) criminal history record and confirmed that BELL has been convicted of at least nine felonies in the State of Washington, including a conviction for *Conspiracy to Commit a Violation of the Uniform Controlled Substances Act: Deliver Cocaine*, in King County

AFFIDAVIT OF SPECIAL AGENT HELLER - 7
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Superior Court, Washington, under cause number 17-1-04705-4, dated on or about April 13, 2018. In Washington, a felony crime is punishable by a term of imprisonment exceeding one year.

### E. Interstate Nexus Examination of Firearms.

32. ATF Special Agent (SA) Oliver Mullins has been trained and is considered an expert in the recognition of firearms and ammunition and their origin of manufacture. After examining the Interarms Star 9mm pistol recovered in this case, SA Mullins determined that this firearm was not manufactured in the State of Washington and therefore had traveled in interstate or foreign commerce prior to being possessed in the State of Washington.

## USE OF CELLULAR DEVICES IN DRUG TRAFFICKING

33. As a result of my training and experience, and based on my consultation with other agents and law enforcement officers, I have an understanding of the manner in which narcotics are distributed and the various roles played by individuals and groups in their distribution. I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations. I am also familiar with the manner in which drug traffickers will use weapons to protect their drug activities and further its goals.

34. Based upon my training, experience, and conversations with other experienced officers and agents, I know that:

    a. Drug trafficking conspiracies usually take place over several months or years, and continue to operate even when enforcement activity results in arrests and/or seizures of drugs and/or money.

    b. Persons involved in the distribution of controlled substances typically will obtain and distribute drugs on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug

AFFIDAVIT OF SPECIAL AGENT HELLER - 8
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dealers will maintain an "inventory," which will fluctuate in size depending upon the demand for and the available supply of the product.

c. Those involved in the distribution of illicit drugs often communicate by telephone in connection with their illegal activities in order to set up meetings with coconspirators, conduct drug transactions, or to arrange for the transportation drugs or drug proceeds.

d. Drug traffickers often document aspects of their criminal conduct through photographs or videos of themselves, their associates, their property, and their product. Drug traffickers usually maintain these photographs or videos in their possession.

e. Drug traffickers routinely change telephone numbers in an attempt to thwart law enforcement. When certain members of a drug trafficking organization change their telephone numbers, they typically call other members to alert them of the telephone number change.

f. Those involved in the distribution of illicit drugs often travel by car in connection with their illegal activities in order to meet with coconspirators, conduct drug transactions, or to transport drugs or drug proceeds.

g. Drug traffickers commonly have in their possession, that is, on their person, at their residences, stash houses, storage units, garages, outbuildings and/or vehicles, firearms, ammunition, and other weapons, which are used to protect and secure their property. Persons who purchase and possess firearms also tend to maintain the firearms and ammunition for lengthy periods of time. Firearms can be acquired both legally and unlawfully, without official / traceable documentation. Persons who acquire firearms from Federal Firearms Licensees, through deliberated fraud and concealment, often will also acquire firearms from private parties and other sources unknown to ATF. Firearms or ammunition are often secreted at other locations within their residential curtilage, and the identification of

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

these firearms will assist in establishing their origins. Persons who purchase, possess, sell and/or trade firearms or ammunition commonly maintain documents and items that are related to the purchase, ownership, possession, sale and/or transfer of firearms, ammunition, and/or firearm parts, including but not limited to driver's licenses, telephone records, telephone bills, address and telephone books, canceled checks, receipts, bank records and other financial documentation on the owner's person, at the owner's residence, or in vehicles that they own, use, or have access to.

h. Drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, most of the drug dealers I have encountered have used cellular telephone for their drug businesses. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

   i. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or

AFFIDAVIT OF SPECIAL AGENT HELLER - 10
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

        IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source.

  ii.    The stored list of recent received, missed, and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates. The information is also valuable in the firearms context because it will identify telephones used by other individuals who are part of illegal firearms transactions, and confirm the date and time of contacts.

  iii.   Stored text messages are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the

AFFIDAVIT OF SPECIAL AGENT HELLER - 11
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

                user who likely have helpful information about the user, his location, and his activities.

     iv.    Photographs on a cellular telephone are evidence because they help identify the user, either through his or her own picture, or through pictures of friends, family, and associates that can identify the user. Pictures also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located. Based on my training and experience in investigating numerous firearms possession and trafficking offenses, I am aware that when individuals who are prohibited from legally possessing firearms seek to acquire firearms, they typically seek to obtain the firearms from private sellers. A common way in which these types of private firearm sales, also referred to as "street sales," are transacted is via electronic communications such as text message, email, and/or telephone calls. I know that cell phones are frequently used to arrange such transactions because of the flexibility and mobility they offer. I am further aware that when individuals are offering items of value for sale, such as firearms, it is common for them to take a photograph of the item and send it via text message or email to an interested party for their review, or to take a photograph of it to post/advertise it via social media or the

AFFIDAVIT OF SPECIAL AGENT HELLER - 12  
USAO #2018R01267

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

|   |   |   |
|---|---|---|
| 1 |   | internet. During numerous investigations of firearms sales, I have |
| 2 |   | found it to be common for buyer's or seller's cell phones to contain |
| 3 |   | photographs of the firearms that were bought or sold. |
| 4 | v. | Stored address records are important evidence because they show the |
| 5 |   | user's close associates and family members, and they contain names |
| 6 |   | and nicknames connected to phone numbers that can be used to |
| 7 |   | identify suspects. |

### CONCLUSION

35. Based on the foregoing, I respectfully submit that there is probable cause to search the **SUBJECT DEVICE**, more fully described in Attachment A, for evidence, fruits, and instrumentalities of the crimes of felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), and distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Sections 841(a)(1), as further described in Attachment B.

Gregory Heller, Special Agent
Alcohol, Tobacco, Firearms, and
Explosives (ATF)

Subscribed and sworn before me this 28th day of November, 2018.

HON. JAMES P. DONOHUE
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT HELLER - 13
USAO #2018R01267

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A

### Subject Device to Be Searched

The **SUBJECT DEVICE** is a black and blue LG brand Model LM-X212TA cellular phone with serial number 804CYYQ025962 and IMEI number 356351-09-025962-0 that was associated with phone number 206-822-5522. The **SUBJECT DEVICE** was entered into Seattle Police Department evidence as tag number 830840-3 and later transferred to ATF Evidence under case 787095-19-0010 as Item #0004.

The **SUBJECT DEVICE** is currently in the custody of ATF and is secured in the ATF Seattle V Field Office evidence vault in Seattle, Washington.

With respect to the **SUBJECT DEVICE**, the authority to search includes both the device itself and any associated SIM card, SD card, or other similar storage device found within **SUBJECT DEVICE** at the time of its seizure on August 3, 2018.

# ATTACHMENT B
## Items to be Seized

From the **SUBJECT DEVICE** described in Attachment A of this warrant, the government is authorized to search for and seize the following items, which are evidence and/or fruits of the commission of the following crimes: felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), and distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1):

a. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b. Stored list of recent received, sent, and missed calls;

c. Stored contact information;

d. Stored photographs depicting controlled substances, currency, drug packaging material, firearms, or other evidence of drug trafficking, and/or which tend to identify the user of the phone or suspected co-conspirators, including any metadata such as embedded GPS data associated with those photographs; and

e. Stored text or chat messages related to possession or distribution of controlled substances and possession or transfer of firearms, or which tend to identify the user of the phone or suspected co-conspirators, including TextNow, SnapChat, WhatsApp, or other similar messaging and social media services where the data is stored on the telephone.